# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | No. 4:07-CR-42(1) |
| | § | |
| SALVADOR YANEZ RUIZ, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion") (Dkt. #2060). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On February 15, 2007, Salvador Yanez Ruiz ("Defendant") and thirty-five co-defendants were indicted for five counts of drug and money laundering-related charges (the "Indictment") (Dkt. #1). The Indictment was superseded four times (Dkt. #322; Dkt. #418; Dkt. #550; Dkt. #887). There is only one charge relevant to the instant Motion—conspiracy to possess with intent to distribute one hundred grams or more of heroin resulting in serious bodily injury in violation of 21 U.S.C. § 846 (Dkt. #887 at p. 3).

On February 4, 2008, Defendant pleaded guilty to one count of conspiracy to possess with intent to distribute 100 grams or more of heroin resulting in serious bodily injury based on his plea agreement, which stated "the parties agree that the appropriate term of imprisonment in this case is 40 years" (Dkt. #1283 at pp. 1–2; Dkt. #1283 at p. 2). On that same day, Judge Richard A. Schell accepted Defendant's guilty plea (Dkt. #887; Dkt. #1274 at p. 1). On December 11, 2008,

Defendant was sentenced to 480 months of imprisonment and five years of supervised release (Dkt. #1667).

This Motion is not the first time Defendant has moved a court for an order reducing his sentence (*See* Dkt. #1980; Dkt. #2017; Dkt. #2036; Dkt. #2051; Dkt. #2053). The Court has denied each (Dkt. #1990 at p. 3; Dkt. #2037; Dkt. #2059 at p. 16). On January 6, 2026, Defendant, *pro se*, filed the instant Motion, arguing that "extraordinary and compelling reasons" warranted his release, including: (1) Defendant's severe and deteriorating medication conditions; (2) Defendant's unusually long sentence; and (3) he has a record of rehabilitation along with mandatory deportation, so he would not be a danger to the public if released (Dkt. #2060 at pp. 9–20). On January 22, 2026, the Government responded to Defendant's Motion (Dkt. #2061). The Court considered all of Defendant's arguments (Dkt. #2060). *See United States v. Mitchell*, No. 4:04-CR-106-31, 2023 WL 3075941, at *4 (E.D. Tex. Apr. 25, 2023) (noting that courts construe pro se motions liberally).

## LEGAL STANDARD

### I. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II. Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973

F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015,

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III. U.S.S.G.'s Policy Statement

### A. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not

expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility

must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

**B. Defendant's age (U.S.S.G. § 1B1.13(b)(2))**

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

**C. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))**

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D) (emphasis added).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024

WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

**D. Victim of abuse (U.S.S.G. § 1B1.13(b)(4))**

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

**E. Other reasons (U.S.S.G. § 1B1.13(b)(5))**

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four

extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established

for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V. The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after

[8] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *Rollins*, 53 F.4th at 358.

## ANALYSIS

### I. The Exhaustion Requirement

Before seeking relief from the Court, Defendant is bound by a threshold requirement to exhaust administrative remedies by submitting a request to the warden to move for compassionate release on their behalf, or by waiver after a "lapse of 30 days" after a request to the warden has been made. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). Here, Defendant attached his initial request for compassionate release submitted to the warden on July 26, 2025 (Dkt. #2060-1 at p. 2). Defendant's request was based on "recent changes in law . . . health conditions, and the continued punitive nature of [his] confinement" (Dkt. #2060-1 at p. 2). The warden denied that request on August 5, 2025 (Dkt. #2060-1 at p. 3).

In its response, the Government argues that the basis for Defendant's request to the warden does not match the arguments Defendant made through this motion (Dkt. #2061). The Government notes that "to exhaust [] administrative remedies, a prisoner must present to the BOP the same grounds warranting release that the prisoner urges in [his] motion" (Dkt. #2061 at p. 4 (citing *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020)). Thus, in the Government's view, Defendant has failed to meet his burden of demonstrating that he has satisfied Section 3582(c)(1)(A)'s exhaustion requirement. The Court disagrees.

The Court finds that Defendant seeks relief under 18 U.S.C. §3582(c)(1)(A), based on "extraordinary and compelling reasons" like the ones he asserted in his request to the

warden—namely, his medical circumstances and his unusually long sentence. *See infra* II. Thus, Defendant has exhausted his administrative remedies.

## II. The "extraordinary and compelling reasons" Requirement

To show that "extraordinary and compelling" reasons warrant a sentence reduction, the Court examines whether a reduction would be consistent with the amended policy statement of U.S.S.G. § 1B1.13. Turning to Defendant's Motion, the request falls under U.S.S.G. § 1B1.13(b)(1) and § 1B1.13(b)(5) (Dkt. #2060 at pp. 9–20).

### A. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

"Compassionate release due to a medical condition is an extraordinary and rare event." *United States v. Bazan*, No. 1:11-CR-142-1-MJT, 2024 WL 1472791, at *2 (E.D. Tex. Mar. 15, 2024) (citing *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)). While a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion, generic conditions like hypertension or high cholesterol are insufficient. *McMaryion*, 2023 WL 4118015, at *2; *Thompson*, 984 F.3d 431 at 434. Here, Defendant has been diagnosed with colon cancer, a pancreatic tumor, diabetes, and cardiovascular disease (Dkt. #2060 at p. 11). However, Defendant fails to provide the stage of his cancer, whether the tumor is malignant, or if he has a short life expectancy due to his medical circumstances to qualify as a "terminal illness" under U.S.S.G. § 1B1.13(b)(1)(A). Without any of that information, the evidence does not support the seriousness or advancement of illness Defendant alleges, an end-of-life trajectory.

Furthermore, Defendant states he is unable to perform self-care, but Defendant mischaracterizes self-care as his "utter powerlessness to navigate a broken bureaucracy to obtain the timely, life-saving treatment he desperately needs" (Dkt. #2060 at p. 11). However, "a

defendant is able to provide self-care if he can complete the tasks of daily living." *United States v. Brewer*, No. 5:24-CR-50010-KES, 2026 WL 710934, at *3 (D.S.D. Mar. 13, 2026). Defendant has not alleged that he unable to complete the tasks of daily living. Therefore, Defendant failed to properly allege inability to provide self-care under U.S.S.G. § 1B1.13(b)(1)(B).

Lastly, Defendant urges the Court to view his medical circumstances "taken together" or in "combination," but courts have done so during the COVID-19 pandemic where the defendants' medical circumstances made them particularly vulnerable to COVID-19 (Dkt. #2060 at p. 14). *See United States v. Ramirez*, 459 F. Supp. 3d 333, 340 (S.D. Cal. 2020) (holding that the defendant was entitled compassionate release because (1) he made a particularized showing of both individual susceptibility to COVID-19 and a high risk of contracting it due to the conditions in their facility, and (2) release was otherwise appropriate under the section 3553 factors); *see United States v. Medeiros*, No. CR 19-00137 JAO, 2021 WL 2636012, at *5 (D. Haw. June 25, 2021) ("The Court acknowledges that, in combination, Defendant's health conditions make him more vulnerable to serious complications from COVID-19 than a healthy person."). The COVID-19 pandemic ended, so it can no longer be leveraged for a defendant's medical circumstances to constitute an "extraordinary and compelling reason" for compassionate release. *United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *4 (E.D. Tex. Feb. 20, 2025) ("Both international and domestic health authorities, including the World Health Organization, the United States Centers for Disease Control and Prevention, and the U.S. Federal Government, have made clear that the COVID-19 pandemic has ended. Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release." (citation modified)).

Therefore, Defendant failed to establish his medical circumstances as an "extraordinary and compelling reason" to grant his motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i).

**B. Unusually long sentence (U.S.S.G. § 1B1.13(b)(6))**

In addition to his medical circumstances, Defendant argues that the Court should consider his unusually long sentence under U.S.S.G. § 1B1.13(b)(6) to find that an extraordinary and compelling reason exists. To meet the criteria under U.S.S.G. § 1B1.13(b)(6), Defendant must establish certain requirements. Although it is true that Defendant's sentence of 480 months was longer than the applicable sentence guideline range of 292 to 365 months based on his total offense level and criminal history category, and Defendant has served at least ten years of that sentence, Defendant has not alleged what specific change in law has produced a gross disparity between the sentence being served and the sentence likely to be imposed today (Dkt. #1640 at p. 17; Dkt. #2060 at pp. 4, 15–20). U.S.S.G. § 1B1.13(b)(6). Accordingly, Defendant has failed to satisfy the criteria for an unusually long sentence to constitute an "extraordinary and compelling reason" warranting his release.

**III. The § 3553(a) Factors**

Even if Defendant had shown extraordinary and compelling reasons that merit his release, the sentencing factors under 18 U.S.C. § 3553(a) weigh against granting his Motion. Under § 3553(a), the Court must address the seriousness of the offense, the defendant's history and characteristics, the need to deter criminal conduct, the need to protect the public, respect for the law, and providing a just punishment. *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023). Here, granting Defendant's Motion would undermine these factors.

Defendant was a leader of a drug-trafficking enterprise distributing heroin, cocaine, and methamphetamine to Houston, Nashville, and Dallas (Dkt. #1640 at pp. 6, 9). Defendant's criminal activities introduced illegal narcotics into those communities and led to a heroin overdose of at least one person (Dkt. #1640 at p. 7). Being a leader of a drug trade network is serious, and Defendant does not minimize the gravity of his offense (Dkt. #2060 at pp. 20–21 ("Ruiz has never, and does not now, minimize the gravity of his offense. He acknowledges his role in a drug conspiracy that resulted in a serious bodily injury and understands that for such a crime, he had a substantial debt to pay to society."). Defendant was ultimately convicted for conspiracy to possess with intent to distribute heroin resulting in serious bodily injury (Dkt. #1667). The nature of the offense, circumstances of the offense, and the need to reflect on the seriousness of the offense weigh against release.

Defendant also has a criminal history involving the sale of controlled substances (Dkt. #1640 at p. 13). Additionally, Defendant has illegally entered the country multiple times (Dkt. #1640 at pp. 13–14). Defendant's criminal history of selling controlled substances shows a pattern of introducing illegal drugs to communities, which creates a need for just punishment to promote respect for the law (Dkt. #1640 at p. 13). *See* 18 U.S.C. § 3553(a). Defendant's repeated inability to follow the law cuts against granting his Motion.

The Court also has an obligation to deter future criminal conduct. 18 U.S.C. § 3553(a)(2)(B). Defendant's repeated criminal history shows a need for deterrence of future criminal conduct by Defendant. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Robinson*, 2023 WL 6785840, at *1 (5th Cir. Oct. 13, 2023) (finding that the factors did not weigh in the defendant's favor because the defendant committed a serious offense, had numerous prior drug convictions,

and was likely to recidivate and pose a danger to the public). Therefore, the defendant's history, characteristics, need to deter criminal conduct, need to provide just punishment, and promote respect for the law all weigh against Defendant's release.

Defendant further claims the concern of protecting the public from future crimes weigh in his favor because of his age and mandatory deportation (Dkt. #2060 at p. 22). First, age statistics for recidivism can be used in determining the need to protect the public from the defendant. *See United States v. Dickerson*, No. CR SAG-97-0410, 2022 WL 1748313, at *2 (D. Md. May 31, 2022). "Age exerted a strong influence on recidivism across all sentence length categories. *Id.* Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." *United States v. Hawkins*, No. CR 03-00194-BAJ-EWD, 2021 WL 5851452, at *8 (M.D. La. Dec. 9, 2021) (citing, *The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Comm'n (Dec. 2017)); *see United States v. Sosa*, No. 2:20-CR-0073 DS, 2023 WL 9002764, at *4 (D. Utah Dec. 28, 2023) ("[Defendant]'s age (72) also makes his risk of recidivism extremely low. According to the Sentencing Commission, only 13.4 percent of individuals aged 65 or older recidivate."). Defendant argues his rehabilitative and educational activities, including completing the BOP's drug education program, multiple self-improvement and educational classes, and obtaining his GED, while serving his sentence should qualify him for compassionate release (Dkt. #2060 at p. 21; Dkt. #2060-2). But a "defendant's good behavior is customarily what is expected of federal prisoners." *United States v. Valdez*, No. 3:98-CR-0133-01-HRH, 2019 WL 7373023, at *3 (D. Alaska Dec. 31, 2019); *United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) ("[Defendant] maintains that his sentence should be reduced because he had 'no write-ups' while incarcerated and participated in prison programming. Not

only is that behavior expected of federal prisoners, but it also is not something a sentencing court should typically have to grapple with . . . .").

Additionally, regarding the need to protect the public from future crimes, Defendant claims that because he is "subject to mandatory deportation upon his release," the Court has already provided a "powerful and definitive layer of public protection that renders continued incarceration for the purpose of incapacitation entirely unnecessary and illogical" (Dkt. #2060 at p. 23). But, Defendant "fails to provide sufficient evidence to support his contention that he would not be a danger to the safety of any other person or the community if released. *United States v. Martinez*, No. 3:14-CR-236-D(2), 2023 WL 3731394, at *2 (N.D. Tex. May 30, 2023). In fact, Defendant has been deported and illegally re-entered the country in the past (Dkt. #1640 at pp. 13–14). Thus, the Court finds that Defendant would pose a danger to the public if granted an early release, and even with Defendant's decreased likelihood of recidivism due to his age, the need to protect the public weighs against Defendant's release.

"[C]ompassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *See Chambliss*, 948 F.3d at 693. After weighing the 18 U.S.C. § 3553(a) factors, the Court finds that granting Defendant's release would not reflect the nature and circumstances of the offense, Defendant's criminal history and characteristics, the need to promote respect for the law and to provide just punishment for the offense, and the need to deter criminal conduct. *Id.* Accordingly, Defendant's Motion should be denied.

**CONCLUSION**

It is therefore **ORDERED** that Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. #2060) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 13th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE